IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROGER E. KIELION,  )  | 8:05CV317 |
| )  | |
| Plaintiff,  )  | |
| )  | |
| v.  )  | MEMORANDUM AND ORDER |
| )  | |
| SOCIAL SECURITY ADMINISTRATION,  )  | |
| Jo Anne B. Barnhart, Commissioner,  )  | |
| )  | |
| Defendant.  )  | |

INTRODUCTION

The Social Security Administration denied, initially and on reconsideration, plaintiff's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* ("Act").  After a hearing, an administrative law judge ("ALJ") determined on October 14, 2004, that plaintiff is not disabled under the Act.  The Appeals Council denied plaintiff's request for review on April 30, 2005.  Plaintiff now seeks judicial review of the ALJ's determination since it represents the final decision of the defendant, the Commissioner of the Social Security Administration.

Plaintiff claims that the ALJ's decision is incorrect for several reasons: 1) the ALJ erred in determining that plaintiff did not suffer from a severe mental impairment; 2) the ALJ erred in determining that plaintiff could perform the full range of light work with occasional performance of postural limitations; and 3) the ALJ erred by denying plaintiff's claim on the basis that he could perform his past relevant work as a bartender.  The court has reviewed the record, the ALJ's evaluation and findings, the parties' briefs, the transcript

("Tr."), and the applicable law, and finds that the ALJ's ruling that plaintiff is not disabled is supported by substantial evidence in the record.

## BACKGROUND

Plaintiff testified that, as of the date of the hearing on April 22, 2004, he was 50 years old and he completed the twelfth grade. Tr. at 308. He was 5'8" tall and weighed 225 pounds at the time of this hearing. Tr. at 309. He is left-hand dominant and can read and write English. Tr. at 310. Plaintiff alleges that he is disabled because he has a back condition, neuropathy in his feet and ankles, pain in his neck, shoulders, lower back, feet, ankles and all joints, and numbness in his feet. Tr. at 84.

On February 15, 2002, a little less than a month before the date of disability, Dr. John A. Woodruff, M.D. ("Dr. Woodruff"), plaintiff's treating physician, examined plaintiff. Tr. at 259. Plaintiff complained of cervical and thoracic neck pain, which he experienced for three months prior to this visit to the doctor, and which lasted all day long at number five on a pain scale of one to ten. He also experienced anterolateral leg numbness in the shins, which had lasted approximately one month prior to this visit to the doctor. This numbness occasionally radiated to the foot. *Id.* Plaintiff's other conditions include coronary artery disease, a history of myocardial infarction, and hypertension. *Id.*

At plaintiff's visit to Dr. Woodruff on February 28, 2002, plaintiff also stated he drank "a fair amount of alcohol" to blunt his upper back pain. Tr. at 254. Dr. Woodruff wrote plaintiff a note saying he could return to work because he had missed some time due to his pain, but that he needed to avoid working on ladders. Plaintiff also made initial inquiries into disability on this date. *Id.*

On April 2, 2002, Dr. Bernadette A. Hughes, M.D. ("Dr. Hughes"), a neurologist, examined plaintiff, at the request of Dr. Woodruff. Tr. at 121-125. Dr. Hughes noted that plaintiff had a longstanding history of alcohol abuse that may predispose him to neuropathy. Tr. at 123. Dr. Hughes ordered tests which showed that plaintiff had chronic polyneuropathy (Tr. at 120) and degenerative disc disease (Tr. at 118). After plaintiff's visit to Dr. Hughes for follow up on October 4, 2002, Dr. Hughes started plaintiff on a daily dose of the medication Neurontin. Tr. at 124-125.

On June 8, 2002, plaintiff went to the emergency room at Bergan Medical Center ("Bergan") for shortness of breath, progressive weakness and pain in his legs primarily caused by alcohol abuse. Tr. at 148. Dr. Woodruff noted that plaintiff's degenerative disc disease was less intense. *Id.* Plaintiff had not taken his medications for hyperlipidemia and hypertension on a regular basis. *Id.*

On June 9, 2002, neurologist Dr. John M. Hannam, M.D. ("Dr. Hannam") examined plaintiff for a neurology consultation at the request of Dr. Woodruff. Tr. at 116. During this visit, plaintiff complained of neuropathy in his feet and legs which he had experienced on a daily basis for the past two months. *Id.* Dr. Hannam diagnosed plaintiff with peripheral polyneuropathy likely secondary to alcohol abuse and cervical disk disease with evidence of mild disk protrusions and cord impingement. *Id.*

At his visit to Dr. Woodruff on August 27, 2002, Dr. Woodruff noted that plaintiff had moderate to severe lumbar spinal stenosis in addition to cervical disc protrusions. Dr. Woodruff referred plaintiff to a neurosurgeon. Tr. at 235. Dr. Woodruff noted that Douglas County, plaintiff's employer, suggested that plaintiff go on long-term disability. Dr. Woodruff suggested that plaintiff go on long-term disability, because plaintiff is too much

of a high-risk employee due to his medical conditions. Dr. Woodruff further noted that upon review of plaintiff's job description, Douglas County's conclusion seemed reasonable despite Dr. Woodruff's concern that not working might intensify plaintiff's struggle with alcohol. Nevertheless, Dr. Woodruff suggested that plaintiff look at alternative forms of employment to keep his mind occupied. *Id.*

On June 14, 2002, during plaintiff's hospitalization for alcohol abuse, Dr. Thomas M. Svolos, M.D. ("Dr. Svolos"), performed a psychiatric consultation on plaintiff. Tr. at 137. Dr. Svolos noted that plaintiff experienced mild depression at this time but that his other symptoms such as tremulousness, gastrointestinal disturbance and delirium, were due to alcohol abuse. *Id.*

Dr. Christopher Milne, Ph.D. ("Dr. Milne"), a consulting psychologist, listed his findings regarding plaintiff's mental state on the Residual Functional Capacity Rationale ("RFC"), dated November 18, 2002. Dr. Milne opined that plaintiff "is limited to simple work and is moderately limited with respect to his ability to respond appropriately to changes in the work setting." Tr. at 30.

On December 3, 2002, the Nebraska agency for Disability Determination Services ("DDS") requested medical consultant assistance regarding plaintiff's claim. Tr. at 172. Dr. J. Chris Strunk, M.D. ("Dr. Strunk"), the consultative examiner, conducted both a physical and psychological assessment of plaintiff on February 12, 2003. Tr. at 173. Dr. Strunk's physical assessment stated that plaintiff's symptoms are highly demonstrative of alcoholic neuropathy and that the regular taking of the drug Neurontin resulted in partial reduction of his symptoms. Tr. at 177-178. Dr. Strunk also noted that plaintiff's back pain appeared to be mild and could possibly be exacerbated by overhead work, but that plaintiff

could otherwise perform the full range of job-related duties. Tr. at 178. Dr. Strunk further stated that plaintiff's alcoholism is in remission and with time, the neuropathic pain in his extremities could decrease. *Id.*

Dr. Strunk stated in his psychological assessment on February 12, 2003, that plaintiff has major depressive disorder now in partial remission due to plaintiff's taking the medication Celexa each day. Tr. at 185. Dr. Strunk also noted that plaintiff exhibited difficulty in adapting to job-related changes and that he had difficulty in social functioning with persons other than his wife and immediate family. *Id.* However, Dr. Strunk's assessment shows that plaintiff's depressive disorder minimally impacts job-related activities and that plaintiff might benefit from optimization of his anti-depression medication. *Id.* Dr. Strunk stated that plaintiff was cognitively intact, and that he was able to "perceive, organize, and analyze all information presented to him." Tr. at 184. Dr. Strunk said that plaintiff exhibited no evidence of suicidality, homicidality, or psychosis, and plaintiff's judgment appeared good. *Id.* Plaintiff's episodes of mental deterioration seemed to accompany bouts of binge drinking and Dr. Strunk admitted that it is difficult to separate what is alcohol-related from what is purely a mental condition. Tr. at 185.

When Dr. Woodruff examined plaintiff on June 10, 2003, he noted that plaintiff had independently stopped taking Celexa for depression and Neurontin for pain, and that plaintiff had not suffered adverse consequences from failure to take those medications. Tr. at 231. Plaintiff visited Dr. Woodruff on March 2, 2004. This is the last of plaintiff's visits to Dr. Woodruff that are indicated in the record. Tr. at 222. At this visit, Dr. Woodruff noted that plaintiff had chronic back pain and a constant pain and stiffness in his muscles. *Id.* As of March 2, 2004, plaintiff only occasionally took the medication Celebrex for pain.

*Id.* Plaintiff's other conditions such as hypertension, coronary artery disease, and hyperlipidemia, were under control with medical therapy as of March 2, 2004. *Id.*

Dr. Linda Schmechel, Ph.D. ("Dr. Schmechel"), a psychologist, stated in the RFC, dated March 12, 2003, that plaintiff's medically determinable impairments are alcohol dependence/withdrawal, alcohol dementia, and depressive disorder. Dr. Schmechel also stated that a severe condition is present, but nothing will meet or equal any listing. The relevant listings are set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02, 12.04, and 12.09. Tr. at 213. The RFC sets forth that plaintiff's non-psychiatric conditions are stable coronary artery disease, hypertension, polyneuropathy and degenerative disc disease. *Id.* Upon examination, plaintiff was "cognitively intact, alert, oriented x4 and scored 30/30 on mini mental status exam. His thoughts were organized, he was able to analyze and perceive information without difficulty. Mood was mildly depressed with restricted affect. Emotional reactions were appropriate." *Id.* The RFC also sets forth that plaintiff's current cognitive impairments might improve in the future with continued alcohol abstinence and that plaintiff would only have moderate limitations in residual functioning secondary to his depressive disorder. *Id.* According to this rationale, plaintiff "appears capable of simple, unskilled employment at substantial gainful activity ("SGA") level." *Id.*

## LEGAL STANDARD

When reviewing the decision not to award disability benefits, the district court does not act as a fact finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial

evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (*citing Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)). In determining whether the evidence in the record is substantial, the court must consider "evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision either "because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citations omitted). The court may, however, "reverse the administrative determination on the ground of unreasonableness." *Bradley v. Bowen*, 660 F. Supp. 276, 279 (W.D. Ark. 1987) (*citing Gavin v. Heckler*, 811 F.2d 1195, 1199-1201 (8th Cir. 1987), *and Deuter v. Schweiker*, 568 F. Supp. 1414 (N.D. Ill. 1983)).

## ALJ's DECISION

A disability is defined as the "inability to engage in any SGA by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. § 404.1505. A claimant is considered to be disabled when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in [significant numbers in] the national economy. . . ." 42 U.S.C. § 432 (D)(2)(A).

The ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations.  The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience.  *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984).  If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience.  *See Braswell*, 733 F.2d at 533.  If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy.  *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question.  *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

Using this analysis, the ALJ concluded that the plaintiff is not disabled within the meaning of the Social Security Act.  Tr. at 24.  The ALJ found that plaintiff had not engaged in substantially gainful activity since his alleged onset date, March 4, 2002.  Tr. at 33.  The ALJ further found that the combination of the following impairments are severe under the Act and regulations: history of a myocardial infarction in May 2000, status post angioplasty and stent placement in May 2000, a history of coronary artery disease, obesity, hyperlipidemia, hypertension, degenerative changes of the cervical spine, degenerative changes of the thoracic spine, degenerative changes of the lumbar spine, polyneuropathy, and alcohol abuse in remission since June 2000.  Tr. at 34.  The ALJ determined that the

plaintiff's severe combination of impairments does not meet or equal the severity of any listing. *Id.*

The ALJ also determined that plaintiff's allegations regarding his limitations are not totally credible. Tr. at 34. The ALJ found that plaintiff's treatment history is inconsistent with a disabling impairment that lasts at least 12 continuous months. Tr. at 31. The ALJ found it to be significant that plaintiff does not need a device such as a cane, walker, or brace for ambulation or pain relief. Tr. at 31, 313. The ALJ observed from the various medical reports in the record that plaintiff has not experienced problems with his medications. Plaintiff testified at the hearing that pain due to neuropathy improved after taking Neurontin. As a result of this improvement, plaintiff's doctor discontinued this medication. Tr. at 317. Plaintiff also testified that his legs felt better after he stopped drinking. Tr. at 319. The ALJ observed that plaintiff alleges that he suffers from pain. However, the ALJ noted that plaintiff does not take an amount of medication that is consistent with the pain that plaintiff alleges. Tr. at 32.

The ALJ further determined that plaintiff's reports about his physical abilities were inconsistent. Tr. at 32. The ALJ observed that plaintiff reported in early September, 2002, that his activities were between the sedentary and light levels of exertion. However, the ALJ also wrote that plaintiff testified at his hearing that his daily activities fall within the light level of exertion range and slightly above. *Id.* Plaintiff testified that he does grocery shopping, pushes the cart with groceries, and carries the groceries into the house. Tr. at 316. Plaintiff also testified that he does light yard work at his home and also some light housework in the home such as dishes and vacuuming. Tr. at 311. Plaintiff further testified that he can perform all of the movements necessary to drive, such as back up and

operate the steering wheel and foot pedals.  Plaintiff drives a Jeep Cherokee, which he needs to step up into.  Tr. at 312.

After consideration of the entire record, the ALJ found plaintiff has the residual functional capacity to perform work at the light level of exertion.  Tr. at 32.  He is able to occasionally lift, carry, push, and/or pull 20 pounds and frequently lift, carry push and/or pull 10 pounds.  *Id.*  He is able to stand and/or walk for six hours and sit for six hours during an eight-hour workday with the standard time taken for breaks.  *Id.*  Plaintiff is occasionally able to climb ramps, stairs, ladders, ropes, and scaffolds, as well as occasionally balance, stoop, kneel, crouch, and crawl.  *Id.*  The vocational examiner, George Meyers ("VE"), testified at the hearing that plaintiff's prior work as a painter qualifies as skilled work at the medium level of exertion, according to The Dictionary of Occupational Titles ("DOT").  Tr. at 325.  The VE also testified that, according to the DOT, plaintiff's prior work as a bartender qualifies as semi-skilled work at the light level of exertion.  *Id.*  Finally, the VE testified that a painter does not have transferable skills to light work.  *Id.*

In making his decision, the ALJ considered all of the medical evidence pertaining to this matter as well as plaintiff's testimony at his hearing.  Tr. at 33-34.  The ALJ specifically took into account plaintiff's residual functional capacity, the listings in the DOT applicable to the work of a painter and a bartender, and the  testimony of the VE.  *Id.*  As a result of the above evidence, the ALJ determined that plaintiff is able to perform work at the light level of exertion.  Tr. at 34.  Specifically, the ALJ found that plaintiff's work as a

bartender was past relevant work which can be performed at the light level of exertion. Tr. at 33.

## DISCUSSION

**A.     Determination of Severe Mental Impairment**

The ALJ found that plaintiff's depression did not constitute a severe mental impairment. Tr. at 30. Plaintiff contends this finding is in error because the ALJ disregarded the RFC pertaining to plaintiff's mental state performed by Dr. Strunk and Dr. Milne. Tr. at 30-31, 173, and 218.

The ALJ gave less weight to Dr. Strunk's opinion that plaintiff "has difficulties maintaining social functioning, has recurrent episodes of deterioration when stressed, is hypersensitive to criticism, and does not have the ability to adapt to changes in the environment" because of the third-party report of plaintiff's wife that plaintiff interacts well with others and reacts appropriately to criticism. The ALJ also took into account plaintiff's own interactions with Dr. Strunk and the ALJ. Tr. at 30-31.

The ALJ gave less weight to Dr. Milne's opinion because he said that "the State Agency psychiatrist gave little rationale for his opinion based on the objective medical evidence." Tr. at 30. Further, the ALJ stated that the ALJ received additional medical evidence after Dr. Milne gave his opinion, and that the record did not substantiate a mental limitation. *Id.*

The ALJ appropriately considered the evidence in this case and made the proper decision that plaintiff did not suffer from a severe mental impairment. An impairment is severe when it or a combination of impairments significantly limit a claimant's physical or mental ability to perform basic work activities without regard to age, education or work

-11-

experience.  20 C.F.R. § 404.1520(c) (2005).  Conversely, an impairment is not severe if the impairment is so slight that the claimant would not be likely to be found disabled even if his age, education and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

This court finds that there is not substantial evidence in the record to support a finding that plaintiff had a severe mental impairment.  Plaintiff's wife reported that plaintiff interacts well with others and has appropriate responses to criticism.  Tr. at 30-31.  Dr. Strunk stated that plaintiff's episodes of mental deterioration seemed to have been brought about by binge drinking (Tr. at 185) and plaintiff has not been drinking since June, 2002 (Tr. at 310).  Dr. Strunk also stated that plaintiff's depression is mild and could be better managed by optimizing plaintiff's anti-depressive therapy.  Tr. at 185.  Plaintiff himself testified during his hearing that he was taking medication for "mild depression."  Tr. at 317. Finally, mental impairment is not cited by plaintiff as a disabling condition in his initial request for disability.  Tr. at 72.   Based upon the record in this matter, the ALJ had substantial evidence to properly determine that plaintiff does not have a severe mental impairment which would prevent him from performing work-related duties.

**B.    Work Limitations**

The ALJ determined plaintiff's residual functional capacity by reviewing the objective medical evidence in the record, plaintiff's subjective allegations of pain, and other symptoms that plaintiff alleged.  Tr. at 31. As a result of this review, the ALJ found that plaintiff's residual functional capacity allows him to

> ...work at the light level of exertion.  He is able to lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours in an eight-hour

>workday with normal breaks.  He is able to climb (ramp, stairs, ladder, ropes, and scaffolds) occasionally.  He is also able to balance, stoop, kneel, crouch, and crawl occasionally (20 CFR 404.1545).

Tr. at 34.  The VE testified that, according to The Dictionary of Occupational Titles, the work of a bartender is classified as semi-skilled, light work.  Tr. at 325.  Based upon the ALJ's review of the record, the ALJ determined that plaintiff could perform his past relevant work as a bartender.[1]  Tr. at 34.

Plaintiff maintains that the ALJ improperly determined that plaintiff is able to work at the light level of exertion because the ALJ did not consider the medical evidence in the record in arriving at its decision.  Plaintiff cites Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001), to support its position (to properly determine a claimant's residual functional capacity, an ALJ is required to consider at least some medical evidence from a medical professional).  However, the defendant argued that an RFC is not only based upon medical evidence but rather all of the evidence of record and the ALJ's evaluation of that evidence.

Defendant cites McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citing, Anderson v. Shalala, 51 F.3d 777,779 (8th Cir. 1995)) to support its position.  McKinney states that in deciding applications for disability benefits, the Commissioner of the Social Security Administration must determine a claimant's residual functional capacity "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."  Id. at 863.  Upon review of the rationale of the ALJ's decision, it is apparent that the ALJ considered

---

[1]Due to the alcohol issue, the court is not recommending that plaintiff return to his specific job as a bartender, only that he is capable of returning to that level of work.

the medical evidence in arriving at its decision, as well as plaintiff's own testimony at his hearing. Tr. at 23-34 and 323.

Plaintiff also argues that the ALJ erred in deciding that plaintiff is able to perform his past relevant work as a bartender. Plaintiff claims that his work as a bartender does not qualify as SGA, because it was part-time work, and therefore, is not past relevant work. Defendant argues that it is the Social Security Administration's policy to take into account part-time work when determining SGA. 20 C.F.R. § 404.1572(a) (2005). Defendant also states that, when making a determination of SGA, it takes into account the work performed by a claimant during the 15 years prior to adjudication. 20 C.F.R. § 404.1565(a) (2005).

The record shows that plaintiff worked as a bartender "on and off" for 15 years prior to September, 2002. Tr. at 75. The record further shows that plaintiff worked four hours per day, three to four days per week, at a rate of $7.00 per hour. Tr. at 77. The Code of Federal Regulations ("C.F.R.") provides that the Social Security Administration considers work that a claimant performed during the past 15 years when determining SGA. 20 C.F.R. § 404.1565(a) (2005). The C.F.R. also provides that a claimant's work may be substantial even if it is performed on a part-time basis. 20 C.F.R. § 404.1572(a) (2005). Based upon its review of the applicable regulations, as well as the record, the court finds that the ALJ correctly determined that plaintiff's prior work as a bartender qualifies as SGA. Plaintiff's work as a bartender qualifies because it falls within the 15-year time frame and was part-time work, which may be considered when determining SGA.     Plaintiff further argues that his work as a bartender does not qualify as SGA because plaintiff's gross monthly earnings do not meet the level necessary to qualify as SGA. Defendant responds that plaintiff's earnings meet the level necessary to qualify as SGA. Defendant asserts that

-14-

the qualifying level of earnings in 1989, 15 years before the date of plaintiff's alleged disability, was $300, and plaintiff's earnings met this level. 20 C.F.R. § 404.1574(b)(2). Upon its review of § 1574(b)(2), the court notes that if work commenced between 1980 and 1989, and if a claimant's monthly wages averaged more than $300, that work could be deemed SGA. The record showed that defendant's monthly wages averaged more than $300 during this 15-year period. Tr. at 77. The court finds that the ALJ correctly determined that plaintiff's monthly wages as a bartender do not preclude his work as a bartender as SGA.

The ALJ determined that plaintiff could perform the full range of light work with the occasional performance of postural limitations. The ALJ also questioned plaintiff's credibility as to the amount of his pain as well as his ability to work. Tr. at 30 and 34. Plaintiff contends these findings are in error because the ALJ rejected the opinions of all of the treating, examining, and reviewing physicians in this matter.

The Social Security regulations state that in determining how much a claimant's symptoms affect that claimant's capacity to work, statements about the "intensity, persistence, and limiting effects" of the claimant's symptoms will be considered as well as the relation of those symptoms to the objective medical evidence. An ALJ will also consider whether inconsistencies appear in the evidence and whether there are conflicts between a claimant's statements and the evidence. 20 C.F.R. § 404.1529(c)(4) (2005). In addition, the standard set forth in Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984) requires that a claimant's subjective complaints of pain not be disregarded by an adjudicator solely because those complaints are not fully supported by the objective medical evidence.

Plaintiff alleged disability as of March 4, 2002, and his disabling impairments included a back condition, neuropathy in the feet and ankles, pain in the neck, shoulders, lower back, feet, ankles and all joints, and numbness in the feet. Tr. at 84. The record shows that when plaintiff began medical treatment and abstained from alcohol, the pain and burning in his feet lessened and the strength in his legs improved. Tr. at 26. The medical records showed that plaintiff had degenerative changes of the cervical spine, thoracic spine and lumbar spine, and that he received conservative treatment for these conditions. Tr. at 30.

The record shows that the ALJ considered that plaintiff did not use any devices for ambulation for pain. As of plaintiff's appointment with Dr. Woodruff on March 2, 2004, plaintiff only took Celebrex for pain and stiffness on an as needed basis. Tr. at 222. Plaintiff reportedly borrowed this Celebrex from his brother. *Id.* Plaintiff testified at his hearing that he no longer took Neurontin for polyneuropathy because his symptoms had improved. Tr. at 317. As of June 10, 2003, he took ibuprofen occasionally to relieve pain and stiffness, and nothing more. Tr. at 231.

Upon examination on March 3, 2003, Dr. Strunk found that plaintiff is physically capable of the full range of job-related activities. Tr. at 29. However, the ALJ said that he gave plaintiff the "benefit of the doubt" and, based on the record, found that plaintiff is capable of working at the light level of exertion. *Id.* On August 27, 2002, Dr. Woodruff noted in his report that plaintiff should look at alternative forms of work. Tr. at 235.

Based on the evidence of record in this matter, the court finds that there is substantial evidence to show that plaintiff's conditions improved with medical treatment and abstinence from alcohol. The court also finds that plaintiff's complaints of pain were

inconsistent with evidence found in the record, and that the ALJ was justified in its finding that plaintiff is capable of working at the light level of exertion.

Based upon its review of the record, the court finds that the ALJ properly reviewed the evidence in this matter to determine that plaintiff's prior work as a bartender qualifies as past relevant work under the C.F.R.  20 C.F.R. § 404.1560(b)(1) and (2).  Further, the ALJ's ruling is consistent with the RFC in showing that plaintiff is capable of performing light work.  Tr. at 34.  Finally the court finds that, upon its review of the record, there is substantial evidence to show that plaintiff's work as a bartender qualifies as SGA, under the C.F.R.  20 C.F.R. §§ 404.1572 and 404.1574.

## CONCLUSION

The court concludes that the ALJ's finding that the claimant is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record as a whole.  The defendant's decision that plaintiff is not disabled is affirmed.

IT IS, THEREFORE, ORDERED that the final decision of the defendant, the Commissioner of the Social Security Administration, is affirmed.

DATED this 5th day of September, 2006.

BY THE COURT:


s/Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge